KAWECKI *v.* STUBER-STONE CO.

1. SALES—UNIFORM SALES ACT—BREACH OF WARRANTY—RESCISSION—TENDER.

Where plaintiff claimed that defendant sold to him a new automobile but instead delivered to him a secondhand one, in order for plaintiff to recover under the uniform sales act (3 Comp. Laws 1915, § 11900) for breach of warranty, he must have returned or offered to return the car received within a reasonable time and in substantially as good condition as when it was delivered to him, unless the deterioration or injury was due to the breach of warranty complained of.

2. SAME—RESCISSION—TENDER—EVIDENCE—SUFFICIENCY.

Testimony on the part of plaintiff *held*, sufficient to establish the fact that as soon as plaintiff was satisfied that the car delivered to him was a used car he offered to return it and demanded payment back of what he had paid on the purchase price.

3. SAME—PHYSICAL TENDER UNNECESSARY WHERE IDLE CEREMONY.

Where, when the offer to return the car was made by plaintiff, defendant denied that it was a used car but insisted that it was a new one, the physical tender back of the car is *held*, to have been unnecessary as an idle ceremony.

4. SAME—RESCISSION—OFFER TO RETURN TIMELY.

Although plaintiff used the car for some time in his business, where there was no evidence that he misused it, and such use and consequent deterioration were due to the fraudulent action of defendant in selling him a used car for a new one, and he offered to return it as soon as he discovered the fraud, the offer to return was timely.

5. SAME—PLEADING—GENERAL ISSUE—NOTICE OF SET-OFF.

Refusal of defendant's offer of proof as to what the use of the car was worth to plaintiff in his business, where the plea was the general issue with no notice of set-off, *held*, not error.

6. SAME—UNIFORM SALES ACT—BREACH OF WARRANTY—MEASURE
OF DAMAGES.

> Instruction by the trial court that plaintiff was entitled
> to recover the amount he had paid and the price agreed
> upon as the value of a used car he turned in, *held*, not
> erroneous, being in conformity with the rule fixed in the
> uniform sales act (3 Comp. Laws 1915, § 11900).

7. SAME—APPEAL AND ERROR—EVIDENCE—ADMISSIBILITY.

> Defendant's complaint that it should have been permitted
> to show the real value of the car turned in by plaintiff,
> and that the value agreed upon was a trading value, *held*,
> without merit, where the record fails to show offer of
> such proof.

8. SAME—TRIAL—INSTRUCTIONS.

> Defendant's complaint of prejudicial remarks by the trial
> court, and that the charge to the jury was "inconsistent,
> ambiguous, prejudicial to the defendant and misleading to
> the jury," *held*, not sustained by the record.

Error to Wayne; Codd (George P.), J.   Submitted
January 26, 1922.   (Docket No. 181.)   Decided
March 30, 1922.

Assumpsit by Boleslaw P. Kawecki against Stuber-
Stone Company for breach of warranty in an exchange
of automobiles.   Judgment for plaintiff.   Defendant
brings error.   Affirmed.

*William J. Griffin*, for appellant.

*Yerkes, Simons & Goddard*, for appellee.

SHARPE, J.   The plaintiff, a real estate dealer in
Detroit, visited the automobile show in that city in
January, 1918.   He there saw an Abbott touring car,
specially painted, in the exhibit of the defendant, who
was distributor of that make of car, then manufactured
in Cleveland.   Plaintiff concluded to purchase the car,
if he could turn in an old Studebaker car he had as a
part of the purchase price.   He claims his attention
was called to some spots of mud on the bottom of the

car and that he said to Mr. Stuber, with whom he was negotiating, "That is not a second-hand car, is it?" and Mr. Stuber answered, "Why, no; don't think for a minute that we should put in a second-hand car when we could sell one that is new.  *  *  *  It is dirty on account of it having been driven from Cleveland to Detroit, and we were late and didn't have time to wash it up good.    That is the way the mud is under there now."    Plaintiff testified that he "relied upon his statement that it was a new car."    The deal was consummated, the defendant accepting plaintiff's car at a valuation of $650, plaintiff making an additional down payment of $100 and executing 10 notes, payable monthly, for the balance of the purchase price of $1,695.    These notes were turned over to the Metropolitan Security Company of Cleveland, with the chattel mortgage on the car securing them.    The plaintiff paid four of them, when he discovered, as he claims, that the car he had got had been theretofore used. After satisfying himself of this fact, he went to Mr. Stuber's office and told him,

" 'I have an old car and I don't want your old car. I paid the price for a new car and I would rather have my money back.    I don't want to pay that money for an old car.'    He says: 'What are you talking about?    I sold you a new car, and this is a new car.' I said, 'You stand on what you said?' and he said 'Absolutely.' "

Leo N. Orton, who accompanied plaintiff, testified as to what was then said:

"Mr. Kawecki said, 'You sold me a second-hand car. I did not pay you money for a second-hand car, I don't want that car, I want the money back and the car is in my garage and you can get it.'    And Mr. Stuber wanted to laugh, and he said, 'I sold you a new car and not a second-hand one.    I know nothing about it, about the foolish talk you are talking about.'    And Mr. Kawecki was excited and walked out and we were not there only about five or six minutes."

Mr. Stuber testified as to this conversation:

"I don't recollect in detail the conversation had with him on that occasion. My recollection is that he came into the office and claimed that he had discovered he had a car that had been used. I don't remember, and I don't believe he ever made a demand. He just made a statement or claim and walked right out again. I don't think he came in more than a minute or so."

And further:

"*Q*. Do you deny that he said that he wanted the car—he wanted you to take the car back and you could have the car?
"*A*. No.
"*Q*. And he wanted his money back?
"*A*. No, I will not deny it."

The plaintiff soon after began suit to recover the amount paid by him and the value of his old car, and had verdict and judgment for $1,401.88. After suit was begun, the car in question was taken and disposed of by the security company under its chattel mortgage. The defendant insisted that the car sold plaintiff was a new car. This issue was fairly presented to the jury, who found with plaintiff.

1. The first error discussed by counsel was the denial of defendant's motion for a directed verdict because no sufficient tender back was made to entitle plaintiff to rescind. Defendant's counsel insists that in order for plaintiff to rescind he must have returned or offered to return the car within a reasonable time and in substantially as good condition as it was when delivered to him, unless the deterioration or injury is due to the breach of warranty complained of. We think this a fair statement of the rule of law governing rescission in such cases as laid down by section 69 of our uniform sales act (3 Comp. Laws 1915, § 11900) and the authorities construing it. The applicable subdivisions of section 69 are:

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election: * * *

"(*d*) Rescind the contract to sell or the sale, and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid. * * *

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price."

The question is whether plaintiff's proofs show a compliance therewith. We think the testimony heretofore quoted, which is substantially all that was said about it, fairly establishes the fact that plaintiff as soon as he was satisfied that the car delivered to him was a used car, offered to return the car and demanded the payment of what he had paid on the purchase price. In view of the defendant's insistence that the car was as represented and his statement—

"I sold you a new car and not a second-hand one. I know nothing about it, about the foolish talk you are talking about"—

we think the jury might well have found that the physical tender back of the car would have been an idle ceremony. The rule is thus stated in 24 R. C. L. p. 293:

"If he would rescind the contract, he must return or tender back the goods to the seller at the place of delivery, unless on making the offer so to do he is relieved of the obligation by a refusal to receive them if tendered. An offer to return, where it is refused, answers the same purpose as an actual return, provided the property is retained for the benefit of the seller whenever he may choose to receive it."

No claim is made by Mr. Stuber that he would have accepted the car had it been offered to him at his place of business. The declaration of Mr. Stuber may well be treated as a refusal to receive the car if tendered. 35 Cyc. p. 150. While the plaintiff had used the car for some time, there is no evidence tending to show that he misused it. The deterioration in its value was due to such use, and its use by plaintiff was due, under his claim, to the fraudulent action of the defendant in selling him a used car for a new one. We think the offer to return was timely. *Gridley* v. *Tobacco Co.*, 71 Mich. 528, 533.

2. Defendant sought to show what the car in question was worth to the plaintiff in his business. The refusal of such offer was based on the failure of defendant to give notice of set-off. This action is not brought to recover damages due to a breach of the contract. The plaintiff, by rescission, treats the contract as terminated and sues to recover what he has paid defendant and for which he has received no consideration. While plaintiff had used the car for some time, it also appears that he had been compelled to expend a considerable sum in its repair. The plea was the general issue. We think plaintiff's counsel are right in their contention that when attention was called to the plea by the trial court defendant's counsel abandoned such claim.

3. Error is assigned upon the court's instruction as to the measure of damages. Under it the jury were permitted to allow plaintiff the amount he had paid on the Abbott car and the price agreed upon as the value of the Studebaker car. The rules and authorities governing an action for damages for breach of warranty have no application here. By reason of the fraud practiced on plaintiff, as found by the jury, he rescinded the contract. The damages to which he was entitled are fixed by subdivision 4 of section 69, above

quoted, as the amount which he had already paid on the contract. This was the rule before the adoption of this statute. *Barker* v. *Cleveland*, 19 Mich. 229, 236.

Defendant further insists that the price at which the Studebaker car was taken was but a trading value and not conclusive evidence of its real value and that they should have been permitted to show its actual value. We find no offer to make such proof in the record.

4. Complaint is made of the "prejudicial remarks of the court." We think counsel too critical in this claim of error. Without cumbering this opinion with a lengthy quotation of the ruling of the court and the colloquy with counsel relied on to support it, we are of the opinion that no prejudicial error resulted therefrom.

5. The charge of the court is said to have been "inconsistent, ambiguous, prejudicial to the defendant and misleading to the jury." We have read the instructions with care and are not so impressed. The court specially pointed out that the two questions for the jury to determine were, *first*, whether the car was a new or used one, and, *second*, whether the plaintiff offered to return it within a reasonable time. On the record as made, these were the determinative questions and we think the jury must have so understood and determined them in plaintiff's favor in reaching their verdict.

6. The other assignment discussed does not, in our opinion, merit consideration.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.