## Black Motor Co. v. Green.

(Decided Nov. 23, 1934.)

(As Modified on Denial of Rehearing March 8, 1935.)

LOW & BRYANT for appellant.
LOGAN E. PATTERSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The appellant, whom we shall refer to as the motor company, has appealed from a judgment of $724.40 recovered against it by W. A. Green.

### The Origin of the Controversy.

On January 7, 1933, Green and the motor company signed a writing by which he turned over to it an old Dodge sedan and the motor company gave him an option to take any one of five different types of cars named in the agreement by paying the balance due on such purchase after deducting the allowance made Green for his Dodge sedan, which allowance as well as the balance was different for each of these cars; the allowance for the Dodge sedan increasing as the price of the new cars increased. The motor company also agreed to allow him to purchase these cars on time, and these terms varied according to the type of new car he might select.

Green then delivered his Dodge sedan to the motor company which repaired it, and traded it off.

In due season Green notified the motor company he would take the Buick 68-C, for which he would by the contract have to pay a balance of $1,270.60 in cash or could pay for it in eighteen monthly payments of $84.94 each, and that he would want it on April 18, 1933. On April 17th he called on the motor company. It had the car ready for delivery, but insisted that Green give surety on the purchase. Green refused to do that, and the motor company refused to deliver the car. The next day Green called again with like result.

### The Suit in Equity.

On April 20th, Green sued the motor company in equity and asked the following relief:

"Wherefore the plaintiff prays that this contract be rescinded and declared a nullity and that this plaintiff recover of the defendant, Black Motor Company, the difference in the purchase price of one Buick car Model 68-C with six wire wheels, which was $1,995.00, which car was agreed to be delivered by the defendant, and the balance of such purchase price which this plaintiff agreed to pay therefor, to-wit: $1,270.60, or $724.40. He prays to recover his costs herein expended and prays for such other general and equitable relief to which he may appear to be entitled."

According to the pleading and evidence for the motor company, it now sought out Green and offered to let him have the Buick 68-C upon his individual contract without surety, but Green refused to sign.

Thereupon the motor company filed its answer wherein it alleged it did not agree to purchase Green's Dodge sedan except by taking it as part payment on the purchase of a new car, that it was not worth exceeding $200, and prayed that Green's recovery should not exceed that figure.

Later the motor company repurchased the Dodge sedan, and by an amended answer tendered it to Green, alleging it was then mechanically better than when Green parted with it. Without another step being taken, Green dismissed his equity suit without prejudice.

## The Common-Law Suit.

On January 2, 1934, Green sued the motor company for $724.40 damages, which he alleged he sustained by its breach of this contract. The motor company by its first paragraph of answer traversed Green's petition, and by a second paragraph it set up the institution of the equity suit and what had occurred therein, its offer to accept Green's individual contract, his refusal thereof, and further pleaded that it went to great trouble and expense in repurchasing the said old Dodge automobile in order to be in position to return the same to the plaintiff in the said equity suit; that it has on different occasions since the said equity suit was dismissed without prejudice offered to surrender and return said old automobile to the plaintiff, and the plaintiff refused to accept same. On all the facts herein alleged the defendant says that the plaintiff is estopped and precluded from undertaking to change his election, and that this action should be dismissed or that the plaintiff should be required to accept his said old automobile in full satisfaction of his alleged claim and damage on account of the alleged breach of the said writing and contract, and it prays that the plaintiff be estopped and precluded from prosecuting this common-law action and undertaking to make a new election of remedies, and it prays for its cost and for all proper relief. To this paragraph the court erroneously sustained a general demurrer. Let us look at just what happened in the equity suit.

When it was instituted the motor company held Green's contract to purchase from it an automobile and had received from Green his Dodge sedan as part payment thereon. Green demanded a rescission, whereupon the motor company said: "All right, here's your car." That put an end to the contract just as effectually as if Green had prosecuted his suit to a successful conclusion. See Black on Rescission and Cancellation (2d Ed.) sec. 529. After this contract was rescinded, it was of no effect whatever, and no action can be based upon it for breach or anything else. It is at an end and the parties are supposed to be as they were before it was made.

The trial court appears to have sustained this demurrer upon what was supposed to be the authority of Goldberger Iron Co. v. Cincinnati Iron & Steel Co.,

153 Ky. 20, 154 S. W. 374. On April 9, 1910, the Cincinnati Iron & Steel Company filed two suits in Ohio; one was filed on a note for $4,800 against Jos. Goldberger individually; the other was a suit for $4,800, for the conversion of a shear, and was filed against the Joseph Goldberger Iron Company, a corporation, to which Goldberger had sold the shear. Later the Cincinnati Iron & Steel Company filed a suit in Kentucky against the Joseph Goldberger Iron Company, Incorporated, and attached its property in Kentucky, and it then dismissed the two Ohio suits without prejudice. When that litigation reached this court, it was contended here that suit for conversion could not be maintained in Kentucky after the Cincinnati Iron & Steel Company had sued on the note in Ohio. That was not error for two reasons. The suit on the note was against Jos. Goldberger individually, and the Kentucky suit for conversion was against Joseph Goldberger Iron Company, Incorporated, was one reason, and another was the Ohio suits were never prosecuted to a conclusion. In the case before us the parties to the suit for rescission and the suit for breach are the same. The suit for rescission was prosecuted to a successful conclusion. Green got his contract rescinded, which was what he sued for, and there are elements of estoppel in this case which did not appear in the Goldberger case. Barely canceling a contract may not, however, do entire equity between the parties. On rescinding a contract, the law implies that each party is to be placed in statu quo ante. Carneal's Heirs v. May, 2 A. K. Marsh. (9 Ky.) 587, 12 Am. Dec. 453; 6 R. C. L. p. 936, sec. 319; 13 C. J. p. 619, sec. 678; Black on Rescission and Cancellation (2d Ed.) sec. 535. "An absolute and literal restoration of the parties to their former condition" is not required; it is "sufficient if such restoration be made as is reasonably possible and such as the merits of the case demand." Fairbanks, Morse & Co. v. Walker, 76 Kan. 903, 92 P. 1129, 17 L. R. A. (N. S.) 558. The property must be returned in as good or substantially as good condition as when received. Edison Fixture Co. v. Maccaferri, 250 Mass. 460, 146 N. E. 3; Kawecki v. Stuber-Stone Co., 218 Mich. 25, 187 N. W. 272; Hirsch v. Verschuur, 93 N. J. Law, 277, 108 A. 181; Advance-Rumely Thresher Co. v. Stohl, 75 Utah, 124, 283 P. 731.

The restored goods do not have to be in the identi-

cal condition they were in when received, and the law is satisfied if they are so substantially so that neither party will be materially enriched or impoverished. Black on Rescission and Cancellation (2d Ed.) sec. 926, note 193.

This contract was rescinded without an understanding as to restoration; therefore the law implies full restoration is to be made. Green says in brief that the Dodge sedan when tendered back to him has been so used and abused as to greatly reduce its value. He should set that up by pleading, and if on final hearing it should be found that the Dodge sedan as and when tendered back to Green was not in substantially as good condition as it was as and when turned over to the motor company, then Green should recover of the motor company the reasonable value of this Dodge sedan as, when, and where it was turned over to the motor company, and it should be adjudged the owner of it; but if it be found this Dodge sedan as and when tendered back to Green was in substantially as good condition as it was as and when turned over to the motor company, then Green should take nothing but the Dodge sedan, and the motor company should recover of him its cost. Of course Green cannot recover for any diminution in value of this Dodge sedan resulting solely from the lapse of time or obsolescence of its pattern or design.

Judgment reversed, with directions to overrule the demurrer to the second paragraph of the answer and for consistent proceedings.