O'KEEFE, RESPONDENT, v. ROUTLEDGE, APPELLANT

(No. 7,853.)

(Submitted October 5, 1939. Decided· February 21, 1940.)

[103 Pac. (2d) 307.]

140

*Mr. Howard A. Johnson* and *Mr. Clarence E. Wohl,* for Appellant, submitted a brief; *Mr. Wohl* argued the cause orally.

*Mr. John Collins,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendant from a judgment in favor of plaintiff in an action to recover the balance due on a contract for the sale and installation of a residential heating system. The action was tried by the court without a jury.

The pleadings and evidence disclose that defendant orally agreed to purchase an oil furnace from plaintiff. The purchase price was agreed upon at $687.50 to cover the furnace proper, and $250 to cover the cost of installing air ducts, pipes, registers, fittings and hood over the furnace. Defendant paid $300 on the contract. The furnace was represented by plaintiff to be one that would satisfactorily heat defendant's house at an even and uniform temperature and that the same would be noiseless and odorless. After the furnace and distributing system were com-

pletely installed and put into operation, defendant was not satisfied with the performance of the furnace. It apparently was noisy, did not heat uniformly and was the cause of some odor. Thereafter, following a series of unsuccessful attempts on the part of plaintiff to eliminate the causes of the unsatisfactory performance, defendant requested plaintiff to come and remove the furnace which he refused to do. Defendant thereupon had the furnace removed and stored at plaintiff's disposal, which was followed a day later by this action. Defendant did not, however, restore the tinwork, air ducts, pipes, registers, fittings or hood over the furnace which constituted the distributing system.

On November 24, 1937, the lower court made its findings of fact and conclusions of law. It found, in substance, that the contract was entered into for a complete heating plant; that in consideration thereof the defendant agreed to pay plaintiff when the installation was complete, the sum of $937.50; that the plant was installed and $300 was paid on the purchase price; that the contract for the installation of the furnace together with all the air ducts, pipes, registers, etc., was an indivisible contract; that thereafter defendant notified plaintiff that he refused to retain the heating plant or to pay the residue of the purchase price, or any part thereof; and demanded that plaintiff remove the furnace; that defendant failed to rescind the contract in that he retained and still retains and uses in his residence the hood over the furnace, together with all air ducts, registers and other appliances used in conducting and distributing heat therefrom; and that defendant did not restore, or offer to restore, to plaintiff any of the parts of the heating plant other than the furnace itself. From these findings of fact the court concluded that plaintiff was entitled to have judgment against defendant for the balance due on the purchase price plus interest and costs.

Subsequently, on motion of defendant, the court amended its findings. The amended findings were identical with the original ones, except that three additional findings were made, as follows: "4. That as a part of the terms and provisions of said agreement to install said heating plant said plaintiff agreed that when the same was completely installed it would be reasonably

adapted to the purposes of heating defendant's residence. 5. That it was expressly agreed between plaintiff and defendant that the sum of $250.00 was to cover the cost of installing said air ducts, registers and fittings, including the hood for said furnace, and that the sum of $687.50 was agreed upon as the purchase price for the balance of said heating plant. 6. That said heating plant was not reasonably adapted to the purpose of heating defendant's residence, and that the failure of said heating plant to heat said residence at an even and uniform temperature continued up to the time of the removal of that part of said plant consisting of the furnace." These additional findings were amply supported by the evidence. The conclusions of law were retained the same as set forth in the original findings of fact and conclusions of law, namely, that plaintiff was still entitled to the unpaid balance of the purchase price of the entire heating system.

The determinative question presented for decision is whether defendant sufficiently rescinded the contract. To answer this question it first becomes necessary to determine whether one or more contracts were entered into between the parties. If but one contract was made, the further question must be answered: Was it divisible or entire?

Counsel for defendant contends that two separate contracts were made by the parties—one for the furnace proper, and the other for the distributing system. A study of the record impels us to the conclusion that the final agreement reached by the parties resulted in a single contract for the entire heating system. However, the record clearly shows that in that agreement it was the understanding and intention of both parties that a certain fixed amount would cover the cost of the furnace proper, and a certain other amount the distributing system, and the court so found. It was also clear that it would be necessary for plaintiff to sublet the work and the furnishing of the distributing system to a third party. Thus there is directly tendered the question whether this single contract was entire and indivisible as the trial court found, or on the contrary divisible and susceptible of partial rescission.

144

The general rule is that: "A rescission must be *in toto*. A ██ party cannot affirm a contract in part and repudiate it in part. He cannot accept the benefits on the one hand while he shirks its disadvantages on the other, unless the two parts of the contract are so severable from each other as to form two independent contracts." (17 C. J. S., Contracts, sec. 416, p. 900.)

Black on Rescission and Cancellation, vol. 3, second edition, ██ sections 583 et seq., puts the matter thus: "583. Unless a contract is clearly divisible or separable, there can be no such thing as a partial rescission of it." Section 585 states: "When a contract is separable or divisible into a number of elements or transactions, each of which is so far independent of the others that it might stand or fall by itself, and good cause for rescission exists as to one of such portions, it may be rescinded and the remainder of the contract affirmed. And it has been held that where a contract consists of parts so distinct and independent that each could be performed without reference to the others, a failure of one of the parties to perform one of the parts or terms of the contract does not authorize the other to rescind the whole contract, and refuse to accept a tender of performance of the remainder of the contract by the party in default. * * * For instance, where one contracted to sell his stock of goods and his two stores and the lots on which they stood to the same purchaser, and both goods and land were sold at the same time and embraced in the same contract, but they were treated as distinct subjects of sale, the price of each being definitely fixed, it was held that an avoidance of the contract by the seller as to the land did not avoid it as to the stock of goods." (See *Wooten* v. *Walters,* 110 N. C. 251, 14 S. E. 734, 736.) See, also, the following cases which recognize the doctrine of partial rescission where a contract is divisible: *Woodlawn Theatre Co.* v. *Continental Securities Corp.,* 237 Ala. 88, 185 So. 763, *Butler Mfg. Co.* v. *Elliott & Cox,* 211 Iowa, 1068, 233 N. W. 669, *Edelman & Co.* v. *Queen Stove Works,* 205 Minn. 7, 284 N. W. 838, and *Thompson* v. *Fesler,* 74 Ind. App. 80, 123 N. E. 188.

In this state we have sections 7567 and 8732, Revised Codes, ▉ which recognize and permit application of the doctrine of partial rescission. Subdivision 2 of section 7567 provides: "He [the party rescinding] must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." Section 8732 provides: "On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation or restoration to the other which justice may require."

When rescission is undertaken after there has been part payment of the purchase price, as here, section 7567 imposes mutual obligations upon the parties, particularly where the rescinding party first invites the other to remove the property or some part thereof. Where that was done, as in this case, and it is apparent that the other party makes no offer to restore what he has received from the rescinding party, the obligations of the rescinding party are correspondingly pruned down.

What does "justice require" in this cause? Defendant retained the tin work and everything connected with the heating plant except the furnace itself. For that which he retained the parties had agreed that $250 would be the cost, and that amount with an additional $50 was paid by defendant to plaintiff. From the record the inference is fairly deducible that plaintiff paid the $250 over to his subcontractor. This would seem logical in view of the testimony in the record to the effect that plaintiff would need from defendant that amount to pay the subcontractor for the tinwork when that portion of the installation was finished.

Defendant, being dissatisfied with the operation of the furnace and efforts to remedy the defects having been futile, requested plaintiff to come and get the furnace. Plaintiff refused and defendant had it removed and stored at plaintiff's disposal. However, defendant determined that the distributing system could be used in connection with some other furnace which he would have to install. It appears to us that by retaining the distribut-

146

ing system the defendant minimized the possible loss and hardship to the plaintiff. If withholding and insisting on keeping this part could be said to have damaged or impaired the intrinsic or resale value of the furnace proper, or have resulted in an unconscionable and unjust enrichment of defendant, then undoubtedly the court under the powers conferred by section 8732, supra, could require defendant to make to plaintiff whatever compensation or restoration justice might require. But where, as here, the distributing system was installed at an agreed cost of $250 and that amount had been paid, what form of equity or justice would require the restoration of that which had been paid for in full and which was satisfactory to the purchaser? To require restoration of this part of the consideration to plaintiff would, in our opinion, have worked an unnecessary hardship on the parties. Part of the cost of installing the distributing system was certainly represented by labor which could not be restored, and most surely someone would have to stand good for that. And, too, there would be the possibility of marring the defendant's residence if the registers and tinwork were torn out, which would likewise require a needless expenditure to repair.

In this connection the question suggests itself as to what is the object of the requirement of restoration. Theoretically, it is to place the parties *in statu quo*. In this aspect, *"statu quo* means to place such party in the same position as he was situated in at the time of the execution of the contract, but absolute and literal restoration of the parties to their former position is not required, and such restoration as is reasonably possible and demanded by the equities of the case is sufficient." (17 C. J. S. Contracts, sec. 438, p. 920.) "The rule * * * is founded obviously on the principle that he who seeks equity must do equity. Conversely, wherever under the circumstances of the particular case restitution by plaintiff is not essential to the complete administration of justice between the parties, it will not be required. * * * The rule in regard to the matter is equitable, not technical." (9 C. J., sec. 95, p. 1209.) " 'An absolute and literal restoration of the parties to their former condition'

is not required; it is 'sufficient if such restoration be made as is reasonably possible and such as the merits of the case demand.' " (*Black Motor Co.* v. *Green,* 258 Ky. 72, 79 S. W. (2d) 409, 411.)

To have followed literally the language of our statute, section 7567, supra, regarding complete restoration, would have meant the undoing of that part of the contract which was satisfactory to the defendant, and which, it seems to us, should have been likewise to plaintiff in view of the fact that he had received the entire amount of money agreed upon for that portion of the contract. That is neither equity nor common sense, nor do our statutes in all cases demand such a strict compliance. The inquiry naturally arises at this point whether it would have availed defendant anything to have restored or even offered to restore the registers and tinwork. Return of the furnace proper was obviously refused by plaintiff who filed suit for the balance due on the purchase price the day after the furnace was removed. When plaintiff declined the invitation to come and get his furnace—the main part of the heating plant—thereby making it necessary for defendant to remove it, could defendant reasonably have surmised that plaintiff would take back the distributing system which had already been paid for, and return the payments made as required by section 7567? We think not. To have tendered it back would have been but a useless act, which the law does not require, in fact one of the very things he is excused from doing by that part of subdivision 2 of section 7567, wherein it is stated: "He must restore to the other party everything of value * * * upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

Again, defendant's offer to restore must be held to have been sufficient when he requested plaintiff to remove the furnace. If plaintiff regarded the offer as inadequate because it did not also specifically include the tinwork, pipes, registers and other fittings, it was incumbent upon him to point out his objection to the tender at the time it was made, and, not having done so, he is deemed to have waived all objection thereto and is

precluded from now objecting to the sufficiency thereof. (Sec. 10682, Rev. Codes, and see *Blackford* v. *Judith Basin County,* 108 Mont. 578, 98 Pac. (2d) 872, 126 A. L. R. 639, and cases therein cited.)

We have examined all of the specifications of error as well as respondent's suggestion that the trial court was in error in making its amended findings. In view of our holding, we do not deem further discussion necessary, except to say that in our opinion the amended findings were properly made. These additional findings did no more than truly to state the facts as disclosed by the record. They did not by any manner or means change the original judgment of the court nor the original findings. In view of sections 9369 and 9370, Revised Codes, pertaining to findings and the procedure by which exceptions must be taken thereto, it would seem to us that the amendments requested by appellant and granted by the court were made pursuant to statutory authority.

It is the generally accepted rule that courts have the inherent power to correct or amend their judgments so they truly express that which was actually passed upon and decided. (*Walsh* v. *Hill,* 121 Kan. 246, 246 Pac. 997; *Smith* v. *Salthouse,* 147 Kan. 354, 76 Pac. (2d) 836, 837; *State ex rel. McHatton* v. *District Court,* 55 Mont. 324, 176 Pac. 608.) Certainly, then, they may add to or make additional findings which are but the foundation for the judgment (sec. 9367, Rev. Codes), so long as the judgment itself is not substantially changed.

The additional findings adopted by the court did not question or alter those previously made. By them the court simply passed upon some points not covered by the findings already made. The case of *Merhar* v. *Powers,* 73 Mont. 451, 236 Pac. 1076, which holds that after judgment has been entered it is too late to correct defective findings, is wholly different from this case. There it was sought to have the findings altered in such manner as to necessitate a change in the judgment.

There seems to us no good reason why the court cannot, after the entry of judgment, particularly where the judgment was entered at the same time the findings were made, on request

of either party, make findings on additional points not touched upon in the findings already made. Moreover, were we to say that the court had no authority to make the amended findings, our result would still be the same. The amended findings simply declare that which we would be obliged to state is revealed by the record without substantial conflict.

In conclusion, we are of the opinion that inasmuch as the record supports the lower court's finding in the matter of the divisibility of the consideration for the furnace and the distributing system, the contract was a severable one, and therefore susceptible of the partial rescission resorted to by defendant in this cause. (See *Thompson* v. *Fesler*, supra.)

The judgment is reversed and the cause remanded with directions to the district court to do equity between the parties in the light of our holding that a rescission did occur. This may be done on the record as it now stands or upon the taking of additional evidence if the court deems it necessary.

ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.

HONORABLE VERNON HOVEN, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified:

I am in accord with that part of the majority opinion holding that the amended findings were properly made by the trial court, and that the final agreement reached by the parties resulted in a single contract for the entire heating system. From that part of the opinion holding that the single contract is severable, and therefore susceptible of partial rescission, I respectfully dissent.

The majority opinion, in determining whether or not the single contract is severable, relies principally upon the lower court's finding: "It was expressly agreed between plaintiff and defendant that the sum of $250.00 was to cover the cost of installing said air ducts, registers and fittings, including the hood for said furnace, and that the sum of $687.50 was agreed upon as the purchase price * * * of said heating plant."

To sustain their contention, the majority opinion cites *Thompson* v. *Fesler*, 74 Ind. App. 80, 123 N. E. 188, 191, which says:

"The test chiefly relied upon is whether the parties have apportioned the consideration on the one side to the different covenants on the other." An examination of the opinion in that case discloses that its holding depends upon the intention of the parties to the contract, citing in support thereof the case of *Gilmore & Co.* v. *W. B. Samuels & Co.*, 135 Ky. 706, 123 S. W. 271, 274, 21 Ann. Cas. 611, wherein it was said: "In determining whether a contract shall be treated as severable or as an entirety the intention of the parties will control, and this intention must be determined by a fair construction of the terms and provisions of the contract itself."

The court in its opinion also quotes with approval from 2 Parsons on Contracts, page 517: "The question whether a contract is entire or separable is often of great importance. Any contract may consist of many parts; and they may be considered as parts of one whole, or as so many different contracts entered into at one time and expressed in the same instrument, but not thereby made one contract. No precise rule can be given by which the question in a given case may be settled. Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject-matter of the contract. * * * If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items." Therefore, as I view it, the *Fesler Case* is not authority for the proposition that the sole test is the ability to apportion the consideration on one side, to the different covenants on the other.

In *Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776, 106 Pac. 55, 57, the court discussed the rule and concluded: "It is, no doubt, well settled * * * that 'when the price is expressly apportioned by the contract, or the apportionment may be implied by law, to each item to be performed, the contract will generally be held to be severable.' [Citing cases.] But this rule is not universal. It is subject to the limitation that a contract will be treated as entire, even when

the obligations of the one party consist of different acts to be separately paid for, where the nature and character of the agreement show that it was intended to be entire.'' (See, also, *Waddell* v. *White*, 51 Ariz. 526, 78 Pac. (2d) 490.)

This court in *Purdin* v. *Westwood Ranch & Livestock Co.*, 67 Mont. 553, at page 557, 216 Pac. 326, at page 327, said: ''Whether or not a contract is severable is a matter of intention, and the intention is determined from the language used and the subject-matter. This statement of the law is so elementary that no citations of authorities are necessary.'' Therefore, whether the consideration be expressly or by necessary implication apportioned, the contract is not necessarily to be regarded as severable. It is not the final test, but is merely a means of determining the ultimate question: What was the intention of the parties?

There is ample evidence here, as I view it, to uphold the lower court's finding of one indivisible contract for the installation of the heating plant. The record discloses, in addition to that pointed out in the majority opinion, the following testimony by the defendant Routledge. I quote: ''Mr. O'Keefe [plaintiff] first wanted me to have the air ducts installed, and he not have anything to do with them, but I told him I would rather have him control the whole thing, and that if he would arrange to have the air ducts installed, that I would pay him at that time for the air ducts and the freight on the furnace.''

The testimony of Mrs. Routledge, a witness for the defendant, was as follows on that point: ''At the second conversation the doctor told Mr. O'Keefe that he did not want to have anything to do with the contract that had to do with putting in this tinwork. Dr. Routledge told Mr. O'Keefe that he would rather that he would take the contract himself and do that tinwork. Dr. Routledge insisted that Mr. O'Keefe should put in a complete heating plant. Dr. Routledge insisted that he wanted a complete job, a complete heating plant, and that he wanted everything in connection with it. The complete heating plant would, of course, include such a device for generating the heat, such as the pipes and registers. He would have to have a com-

152

plete heating system.  *  *  *  Dr. Routledge told Mr. O'Keefe that he was not going to be bothered attending to the tinwork with one outfit, and with the furnace with another.''

The testimony of the plaintiff himself on that point was as follows: "Dr. Routledge told me he wanted the contract let in one unit. I did not tell the doctor that I would attend to the installation of the tinwork and that it would cost him two hundred fifty dollars. I did not tell him that the cost of the tinwork was two hundred fifty dollars, until the next fall when he wanted to take the furnace out. When the doctor told me he was going to take the furnace out, he asked me what I had paid for having that work done and I told him two hundred fifty dollars. I paid the Dart Hardware a little more than I mentioned. I paid extra for the pipes that went into the flues and the pipes I installed in the second water jacket. I paid two hundred fifty dollars for the tinwork.  *  *  *  At the time I had the first conversation with Mr. Routledge at his house he asked me what the furnace would cost, what I would take to install him a complete heating plant in his home including everything.''

It is not the province of this court to reject the findings of a lower court so long as there is ample evidence to sustain that court's findings. As may be seen from the testimony of the parties themselves, the defendant, by his own statements, would not have entered into the purchase of the furnace without the agreement by the plaintiff to install the distributing system. The language of the parties, the subject matter, all tend to indicate that the parties, at the time of entering into the contract, intended that the contract should be entire and indivisible. As may been seen, the defendant insisted that the sole responsibility under the contract be placed upon the plaintiff, and that the subject matter be contained in but one contract. (*Fancher* v. *Board of Commrs.*, 28 N. M. 179, 210 Pac. 237; *Waddell* v. *White*, supra; *Leeker* v. *Marcotte*, 41 Ariz. 118, 15 Pac. (2d) 969.)

We then come to the question: Did the defendant effect a rescission by tendering back a part of that which he received

under the contract? The lower court found that the defendant restored the furnace proper but retained the distributing system.

The general rules of rescission have been quoted in the majority opinion. Courts have universally held that if it is impossible to restore the consideration, or if it becomes impractical so to do, the rescinding party is then excused from the necessity of making restoration. In the case before us, as I view it, we cannot say that the tinwork could not have been removed, nor can we go so far as to say it was impractical or impossible so to do. Neither does the record disclose that the defendant offered to restore the distributing system, consisting of the pipes, registers, tinwork, fittings and so forth. It indicates that the defendant offered to return, and did return, only the furnace proper. Whether or not the retention of a part of the heating system may operate to the advantage of the plaintiff, is not for the rescinding party to determine.

Section 7567, Revised Codes, is clear and leaves no opportunity for any other construction than that the rescinding party must: (1) Restore everything of value which he received under the contract; or (2) must offer to restore the same upon condition that such party shall do likewise, unless (a) the latter is unable to do so, or (b) positively refuses to do so. The record does not disclose the restoration of, or an offer of restoration of, the entire fruits of the contract on the part of the rescinding party; it does not disclose the inability of the plaintiff to restore the consideration for the entire contract, nor a refusal on the part of the plaintiff to accept such restoration, had it been offered. A mere surmise on the part of the rescinding party, such as is referred to in the majority opinion, that the plaintiff would not take back the complete heating plant is not such an offer of restoration as is contemplated by the statute.

Section 10682, Revised Codes, cited by the majority opinion, can have no application here.

I submit that the lower court was correct in its finding that the defendant failed in his attempt to rescind the contract, and therefore, no error appearing, that the judgment should be affirmed.