No. 79-53

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

CARL D. SCOTT,

Plaintiff and Respondent,

vs.

FLORAL HJELM,

Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Ravalli.
Hon. James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Robert Brown argued, Stevensville, Montana

For Respondent:

French, Grainey and Duckworth, Ronan, Montana
Philip Grainey argued, Ronan, Montana

---

Submitted: June 18, 1980

Decided: July 22, 1980

Filed: JUL 2 3 1980

_Thomas J. Kearney_
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by defendant from a judgment requiring plaintiff to surrender possession of a mare to defendant, requiring defendant to pay plaintiff $1,250, to execute transfer documents for a foal born to the mare, and for various other relief.

In 1978 plaintiff Carl D. Scott learned that defendant Floral Hjelm had registered quarter horses for sale. The parties had several telephone conversations concerning these horses and Scott went to the Hjelm residence and inspected several mares on a Saturday in November, 1978.

According to Scott, he advised Hjelm that he was not interested in the purchase of any horse other than a mare named Satin Beaver. Hjelm contends that a sale of five mares was negotiated for the sum of approximately $5,600. The negotiations were never reduced to writing.

On the following Monday Scott returned with a horse trailer and took the mare named Satin Beaver. Scott contends that he gave Hjelm a check for $1,000 for Satin Beaver which was the total purchase price. Hjelm contends that the $1,000 was merely a down-payment on the five mares and Scott was to pay the balance when he collected the remaining mares.

Hjelm did not give the registration papers and transfer documents for Satin Beaver to Scott at the time the check was written and has refused to do so thereafter.

A foal was born to Satin Beaver while the mare was in Scott's possession.

On February 16, 1979, Scott filed a complaint against Hjelm in the justice court of Ravalli County seeking judgment for $1,108 for Hjelm's alleged failure to produce registration documents on Satin Beaver, plus $1.50 per day mare care.

Defendant answered and filed a counterclaim for $4,600 representing the balance of the purchase price. The case was transferred from justice court to District Court because the

- 2 -

counterclaim exceeded the jurisdictional limit of the justice court.

On July 20, 1979, the case was tried before the District Court sitting without a jury. The District Court issued findings of fact, conclusions of law and judgment one week thereafter in which plaintiff was required to surrender possession of Satin Beaver to defendant, defendant was required to pay plaintiff $1,250 and surrender all documents necessary to transfer title of Satin Beaver's foal to plaintiff, and at plaintiff's option he could retain possession of the foal, return the foal with Satin Beaver until it is weaned and then retake possession of the foal not later than October 15, 1979, and that if plaintiff did not retake possession by that time, title to the foal would revert to the defendant.

Appellant presents the following issues:

1. Whether the facts of the case support the court's conclusion that the parties were "merchants" within the meaning of section 30-2-104, MCA?

2. Whether the facts of the case support the conclusion of law that the oral contract was unenforceable for lack of writing in confirmation of the oral contract?

3. Whether the division of the property constitutes a rescission of the contract to purchase?

4. Whether the judgment is supported by the facts as found by the trial court?

Appellant contends that the District Court erred in its conclusion that the parties were "merchants" in horses and that this was a transaction "between merchants" within the meaning of section 30-2-104, MCA.

The District Court also concluded that there was a lack of writing in confirmation of the oral contract as required by section 30-2-201(1) and (2), MCA, and, as a consequence, the oral contract for the sale of the five mares was unenforceable. Section 30-2-201, MCA, reads as follows:

> "Formal requirements--statute of frauds. (1)
> Except as otherwise provided in this section

a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:

"(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (30-2-606)."

Under this statute, whether the parties have been classified as merchants is not relevant unless there is a writing in confirmation of the contract. In the present case there was no writing. Thus, the District Court's finding that the parties were merchants is irrelevant to our determination of this appeal.

The appellant next contends that the contract for the purchase and sale of the five horses is enforceable despite the lack of a writing. In support of this contention the appellant directs the Court to section 30-2-102, MCA, which outlines the scope of the statute of frauds section which is quoted above. Section 30-2-102, MCA, provides:

> "Scope—certain security and other transactions
> excluded from this chapter. Unless the context
> otherwise requires, this chapter applies to
> transactions in goods; it does not apply to any
> transaction which although in the form of an
> unconditional contract to sell or present sale
> is intended to operate only as a security tran-
> saction nor does this chapter impair or repeal
> any statute regulating sales to consumers, far-
> mers or other specified classes of buyers."

This statute does not support appellant's contention that the transaction in question falls outside the scope of section 30-2-201, MCA. The transaction does not involve a security transaction. The appellant has not directed the Court to any statute which would prevent the statute of frauds section from applying to this transaction, and research has not revealed any such statute. We determine that the transaction falls within the provisions of section 30-2-201, MCA.

The appellant next contends that the manner in which the property was divided did not constitute a rescission of the contract. In essence, appellant is contending that a rescission of a contract must result in the parties being placed in status quo, and that the parties in the present case were not placed in status quo because Carl Scott was allowed to keep the first foal.

Section 28-2-1716, MCA, states: "On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation or restoration to the other which justice may require."

This Court has had occasion to consider this statute in O'Keefe v. Routledge (1940), 110 Mont. 138, 103 P.2d 307, and made the following observation:

> "In this connection the question suggests itself
> as to what is the object of the requirement of
> restoration. Theoretically, it is to place the
> parties in statu quo. In this aspect, 'statu
> quo means to place such party in the same posi-
> tion as he was situated in at the time of the
> execution of the contract, but absolute and
> literal restoration of the parties to their
> former position is not required, and such
> restoration as is reasonably possible and
> demanded by the equities of the case is
> sufficient.' (17 C.J.S. Contract, sec 438, p.
> 920.) 'The rule . . . is founded obviously on
> the principle that he who seeks equity must do
> equity. Conversely, wherever under the

- 5 -

> circumstances of the particular case restitution by plaintiff is not essential to the complete administration of justice between the parties, it will not be required . . . The rule in regard to the matter is equitable, not technical.' (9 C.J., sec. 95, p. 1209.) '"An absolute and literal restoration of the parties to their former condition is not required; it is sufficient if such restoration be made as is reasonably possible and such as the merits of the case demand."' (Black Motor Co. v. Green, 258 Ky. 72, 79 S.W.2d 409, 411)" 110 Mont. at 146-147.

In the present case, complete rescission was not possible, because the circumstances had changed. The District Court was faced with the task of properly allocating two horses and an unborn foal, where there had only been one horse and an unborn foal at the time of transaction. In such circumstances, the trial judge must use his discretion in doing equity, and this Court will not reverse that decision short of a showing of abuse of that discretion. One foal was sired while the mare was in Hjelm's possession and the other was sired while the mare was in Scott's possession. On the basis of the facts presented in the record and the District Court's findings, we cannot say that Hjelm is in a worse position now than prior to the transaction. She has Satin Beaver and an unborn foal. Under these circumstances, the trial court did not abuse its discretion.

Finally, the appellant contends that the judgment is not supported by the facts as found by the trial court. This contention is based on the arguments put forward above, i.e., rescission was not proper and if proper, then restoration was not properly accomplished. As these two contentions have been answered above, they need not be addressed again.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

- 6 -

Mr. Justice John C. Sheehy, concurring in part and dissenting in part.

I concur in the majority opinion insofar as it affirms the decisions of the District Court, but disagree with the method of restoration that was determined by the District Court.

Satin Beaver, the mare sold by Floral Hjelm to Scott, was a registered horse. While in Floral Hjelm's possession, the mare had been bred to another registered horse, a paint, and the prospect of a paint foal which could be registered made that foal more valuable than it would be otherwise.

After the mare was transferred to Scott, Satin Beaver foaled. The resulting colt was retained by Scott. While Satin Beaver remained in the possession of Scott, he caused her to be bred to another horse and at the time of trial that foal had not been born. Under the terms of the District Court's judgment, however, when the matter was finally decided, it decreed that Satin Beaver be returned to Floral Hjelm and that she be allowed to keep the second colt, although Floral Hjelm has no basis upon which to register that colt. She was also required to return the $1,000 to Scott, plus $250 as payment for Scott keeping both Satin Beaver and the first foal.

Scott, under the findings of the District Court, breached his contract with Floral Hjelm. It is only because of the statute of frauds that his contract cannot be enforced against Scott. In attempting restoration, however, Floral Hjelm should not be in a worse position than she was before the breached contract. If anyone should bear the brunt of inequity, it should be the one who breached the contract, Scott.

Therefore, I think a proper resolution of this case would be that Satin Beaver and the first foal be returned to Floral Hjelm by Scott. If the first foal is not now available, the value of that foal should be returned to Floral Hjelm. The second foal should be given to Scott, who cannot complain if the second foal is not registerable since the breeding of the second colt was his doing. It would also be fair to require that Floral Hjelm return the $1,000 which she received on the purchase price of the mare, and the sum of $250 for the care of the mare while it was out of her possession.

It should be realized here that Floral Hjelm has lost valuable breeding years in Satin Beaver and that she can never be made whole, all because of the statute of frauds, which prevents complete relief in this case.

John G. Shelby