[No. 1389.]

## THE STATE OF NEVADA EX REL. C. C. POWNING, RELATOR, *v.* J. E. JONES, STATE LAND REGISTER, AND J. F. EGAN, STATE TREASURER, RESPONDENTS.

CONTRACT—ENTIRE OR SEPARABLE, HOW ASCERTAINED.—Whether a contract is entire or separable into several independent contracts, depends upon the intention of the parties, to be ascertained from the language employed and the subject matter of the contract.

IDEM—STATE LAND CONTRACTS ENTIRE—FORFEITURE.—Contract made by the state for the sale of state lands considered and held to constitute an entire contract for all the land described therein, and that if the purchaser fails to pay interest upon the balance due upon any part of the land, he forfeits it all.

IDEM—LEGISLATIVE INTENTION.—The statutes of Nevada permitting such a sale reviewed, and held to authorize the kind of contract made in this case, and to show that the legislature intended it to be entire and indivisible.

(Syllabus by BIGELOW, J.)

ORIGINAL application for writ of mandate.

The facts fully appear in the following statement by the justice delivering the opinion:

Original application to compel the respondents as respectively land register and treasurer of the state of Nevada, to receive from the relator the interest due upon a certain forty acres of land which the state had, along with other lands, contracted to sell to him. The respondents refused to receive the money upon the ground that the contract was entire, and that the relator must pay interest upon all the land included therein, or forfeit all of it.

The contract was as follows: "This article of agreement made and entered into this 20th day of July, 1891, by and between the state of Nevada, acting through J. E. Jones, surveyor general and ex-officio register of the state land office of said state, party of the first part, and Christopher C. Powning of the county of Washoe in the state of Nevada, party of the second part; witnesseth: That the party of the first part, for and in consideration of one dollar and twenty-five cents per acre, good and lawful money of the United States, payable as hereinafter expressed by the party of the second part, doth agree to convey to the party of the second part, by good and sufficient patent the following described lands. to wit: Southwest one-fourth of southeast one-fourth, and east one-half of south-west one-fourth of section 28, and northeast one-fourth of northwest one-fourth of section 33, of township 40 north, range 45 east, Mt. Diablo base and meridian, containing one hundred and sixty acres   *   *   * in consideration of which the party of the second part for himself, his heirs, administrators, executors or assigns, doth agree to pay the state of Nevada at the rate of one dollar and twenty-five cents per acre, as above stated, of which sum the party of the first part has heretofore paid the sum of twenty-five cents per acre; and it is hereby further agreed that the party of the second part shall within twenty-five years from the date of this article of agreement, pay the balance of said one dollar and twenty-five cents per acre, viz. one dollar per acre, *i. e.* the sum of one hundred and sixty dollars, with interest thereon at the rate of six per cent. per annum, interest payable annually, as provided in section 8 of an act entitled ' an act to provide for the selection and sale of lands that have been or may hereafter be granted by the United States to the state of Nevada,' approved March 12, 1885, as amended March 11, 1889. And it is hereby further provided and agreed that the party of the second part, his heirs, executors, administrators .or assigns, may at any time prior to the maturity of this contract make full payment for the lands described in this article, and receive from the state of Nevada a patent for the same, issued in the name of the applicant. This contract is made upon the express conditions, viz: That if the said Christopher C. Powning, party of the second part, shall fail to pay the principal sum herein specified, or the interest thereon, according to the terms of this agreement as herein stipulated, the lands herein described, and the money

paid thereon, shall immediately and unconditionally revert to the state of Nevada, and the lands be thereafter subject to sale in the same manner and under the same conditions as though this contract of sale had not been made."

The facts are agreed upon, but the defendants demur to their legal sufficiency.

*Baker, Wines & Dorsey,* for Relator.

I.   The contract is severable for the smallest legal subdivision of land which could be sold.   (Statutes reviewed.)

II.   The contract in its very nature is divisible in character. (1 Atl. Rep. 320; 66 Pa. St. 351; 82 Pa. St. 267; 89 Pa. St. 231; 25 Atl. Rep. 120.)

Case argued orally.

*J. D. Torreyson,* Attorney General, for Respondents.

I.   The contract is entire and undivisible.   (*Alcott* v. *Hughes,* 105 Pa. St. 350.)   Though made up of severable subdivisions of land it was intended to accomplish but one object, to-wit, the purchase of one hundred and sixty acres of land.   There is but one price, one dollar and twenty-five cents per acre, one time, twenty-five years, and one rate of interest, six per cent. (*Quigley* v. *De Hass,* 82 Pa. St. 273; *Shinn* v. *Bodine,* 60 Pa. St. 182; *Lucesso Oil Co.* v. *Brewer,* 66 Pa. St. 354.)   The question whether a contract is entire or severable can only be determined by considering the language and the subject-matter of the contract.

II.   No contract can be rescinded unless both parties are restored to the condition in which they were before the contract was made.   One party cannot insist on the validity of one portion of a contract and avoid the remainder.   (*Moore* v. *Brackett,* 98 Mass. 207; Storey on Contracts, Vol. 1, Secs. 25, 26, 34.)

Case argued orally.

By the Court, BIGELOW, J. (after stating the facts as above):

This case has been argued and submitted to us upon the assumption that the relator had the right, whenever he saw fit, to refuse to pay the interest due upon the contract involved in this action, and thereby to throw up or surrender the entire

contract; and further that he would also have that right as to a part of the land included therein, provided the contract is a separable or divisible one. As the latter point seems sufficient for the determination of the action, we shall make the same assumptions, and consider only that proposition.

The relator claims that the contract was a' separable and divisible agreement for the sale to him of four different subdivisions of land at so much per acre; that in the first place the state would have sold to him any of the tracts without the others; that it is a matter of indifference to the state whether the relator takes the whole of the land included in the contract or only a part of it; and that consequently, under the contract and the statute authorizing it, he had the option of paying upon one or more of the forty acre tracts, and of forfeiting the others.

The rule for determining when a contract is separable or entire is stated in 2 Parson Contracts 517, as follows: "The question whether a contract is entire or separable is often of great importance. Any contract may consist of many parts, and these may be considered as parts of one whole, or as so many distinct contracts, entered into at one time and expressed in the same instrument, but not thereby made one contract. No precise' rule can be given by which this question in a given case may be settled. Like most other questions of construction, it depends upon the intention of the parties, and this must be discovered in each case by considering the language employed and the subject matter of the contract. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed or is left to be implied by law, such contract will generally be held to be severable." All construction is an effort to determine the meaning which the parties intended to give to an instrument—to ascertain their intentions. The latter part of this extract from Parsons, containing the rule which seems to be principally relied upon by the relator's attorney, is merely the statement of a subordinate rule for ascertaining that intention when there is nothing further in the contract indicating it than the fact that it consists of several distinct items, of which the price of each is fixed or can be ascertained from the agreement, for the author immediately adds: "But the mere fact that the subject of the contract is sold by weight or measure, and the

value is ascertained by the price affixed to each pound or yard or bushel of the quantity contracted for, will not be sufficient to render the contract severable." Thus, in *Quigley* v. *De Haas*, 82 Pa. St. 267, 273, it is said: " Whether a contract be entire or severable depends more on the intention of the parties as gathered from the whole instrument than upon the specific method of performance or payment. * * * The rule as adopted in the case of *Lucesco Oil Co.* v. *Brewer*, 66 Pa. St. 351, from Parsons on Contracts, that if the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contract will generally be held to be severable, is certainly applicable to contracts such as that which was under consideration in that case. But it is not even intimated that the circumstances therein stated would override the clear intention of the parties if such intention was apparent from the whole face of the agreement. Indeed, it is expressly said by the author by whom the above rule is stated that no precise rule can be given by which this question in a given case may be settled, but, like most other questions of construction, it must depend upon the intention of the parties as gathered from the whole subject-matter of the contract." As thus understood, Parsons' rule has been approved in many cases. (*Gray* v. *Hinton*, 2 McJrary, 167; *Shinn* v. *Bodine*, 60 Pa. St. 182; *Mining Co.* v. *Jones*, 108 Pa. St. 55, 66; *More* v. *Bonnet*, 40 Cal. 251; *Clark* v. *Baker*, 5 Metc. (Mass.) 452; *Morse* v. *Brackett*, 98 Mass. 205; *Mansfield* v. *Trigg*, 113 Mass. 350.)

Viewing this contract as a whole, and taking into consideration all of the language used in it, it seems clear that the intention was to make it entire as to all of the land embraced therein, and not divisible into four different contracts for as many different tracts.

In the first pl;ce the argument to the contrary proves too much. There is not one word in the agreement indicating any intention that it should be divisible upon the lines of the forty-acre tracts. Upon the agreement itself, the argument must be based upon the language providing for the sale of a number of different acres at a uniform price per acre. But if this proves anything, it proves, not that the contract embraced four different contracts for as many forties, but one hundred and sixty,

or one to each acre. This, however, would be entirely inadmissible, because by Gen. Stat. Sec. 337, it is provided that no lands shall be sold in tracts less than the smallest legal subdivision, which of course means in less than forty-acre tracts, except where by reason of township or meander lines the subdivision may embrace a less quantity.

Next, it is provided in the contract that the purchaser is to pay not alone one dollar additional for each acre of the land, but a gross sum of one hundred and sixty dollars, together with interest on that gross sum at the rate of six per cent. per annum. The one hundred and sixty dollars is the principal sum to be paid, and it is further provided that if the purchaser " shall fail to pay the principal sum herein specified, or the interest thereon," then "the lands herein described and the money paid thereon" shall be forfeited to the state. Could it be any more plainly stated that, if the purchaser fails to pay the interest on the whole one hundred and sixty dollars, he thereby forfeits all interest in the whole lands, and not alone in such proportional part as he fails to pay upon ? If this is not an entire contract as to all the land embraced by it, it is difficult to say what language should have been used to make it such. To hold otherwise would be, to our minds, not to construe a contract already made by the parties, but to make one for them.

Nor do we find anything in the statute indicating an intention to place a different construction upon these contracts for the sale of state lands from that which their language indicates. On the contrary, everything therein contained confirms the views we have expressed. True it is that the relator could have purchased one or more of these forty-acre tracts without the others, and could by applying for them separately have obtained a separate contract for each one. But he did not do so, and the question now is not what might have been done, but what was actually done. An owner might have a large tract of land for sale of which he is willing to sell any particular subdivision separately, but this would not indicate very strongly, after a contract had been made for the sale of several subdivisions, that it was the intention to still leave the purchaser the option of taking the whole or any part of them. What has actually been done here is that a contract has been entered into providing for the sale of several tracts of land for

a gross sum, and conditioned that if the purchaser shall fail to pay the interest due annually upon that gross sum, he shall forfeit all of the land; and this seems to be in accordance with the provisions of the statute concerning these contracts.

Apparently the legislature did not anticipate that an applicant would be shrewd enough to make separate application for each subdivision, so as to enable him to forfeit one or more of them without affecting the others, and as a matter of fact we believe it has not often been done. The lawmakers evidently supposed that an applicant would apply for all the land he wished to purchase in one application. The law was accordingly framed upon that theory, and indicates an intention that each application and each contract shall be treated as a unit, and to stand or fall all together.

The land laws have been amended several times, but the amendments do not seem to have affected this question, and for convenience we shall refer to the original sections. A purchase of land is always to be initiated by an application under section four of the act (Gen. Stat. Sec. 327), which application " shall designate, in conformity with the United States survey, the tracts of land applied for." After the register has ascertained that the land is for sale, and that the applicant is entitled to purchase the same, section ten of the act (Gen. Stat. Sec. 333), provides that he shall cause a notice to be prepared and served, " requiring the applicant  *  *  *  to make full payment, or enter into contract  *  *  *  for the purchase of the land applied for by said applicant, and shall inclose with such notice duly prepared contracts, in duplicate, for the applicant to sign." If, at the expiration of ninety days, the applicant " shall fail to make the required full payment or to sign and return to the register such contracts, he or she shall forfeit his or her right to complete the purchase of such land, and the title to such land shall rest as fully in the state as though it had never been applied for, and which thereafter shall be subject to sale " by the state.

· It will be noticed that all through the statute the lands applied for are spoken of as a whole, and so far as the language indicates the intention, are to be all paid for or all contracted for, or all forfeited. The contracts to be sent out are to cover the lands applied for, and are to be executed just as sent, or the land is to be forfeited. There is nothing that, to our

minds, indicates any intention to allow a division or selection of them to be made. The same must be said of section 8 (Gen. Stat. Sec. 331), providing for the form and conditions of the contract. Here, as before, the lands applied for are spoken of as a unit—as "such lands." It is upon the remainder of the purchase price of such lands that the applicant is to pay interest annually; it is for the lands described in the contract that he may make full payment and receive a patent; and upon failure to pay the interest due upon such lands they shall immediately and unconditionally revert to the state. The language covers all that were applied for in the first instance, and nowhere is anything less than the whole spoken of.

There was a purpose, too, in attaching such a condition to the sale of the lands. The policy adopted by the legislature has been to sell as much of this state land and obtain as much money for it as possible. In pursuance of this policy it is an advantage to the state to compel the purchaser to either pay for all of the land or forfeit it all. He is more likely to continue to pay upon all, or if he does not, the state will be gainer the additional money forfeited, and good land will be surrendered as well as poor. To be sure, the applicant might, perhaps, immediately apply again for the tracts that he wishes to keep, but even then the state will be gainer the money forfeited upon the first payment.

Right or wrong, this has been the policy under which our land laws have been framed, and we are of the opinion that the construction we have placed upon the contract and the law is simply in accordance with that policy, and in accordance with the clear intention of the legislature.

The demurrer is sustained and the application for the writ dismissed.