[No. 1423.]

H. H. HUTCHENS, PLAINTIFF AND APPELLANT, *v.* JAMES SUTHERLAND, DEFENDANT AND RESPONDENT.

(Syllabus by BIGELOW, C. J.)

1—CONTRACTS—ENTIRE OR SEPARABLE.—Whether a contract is entire, or separable into several distinct and independent contracts, is a question of the intention of the parties, to be ascertained from the language employed and the subject matter of the contract.

2—SAME—SEVERABLE, BREACH OF ONE NOT BREACH OF OTHER.—Where a contract, although contained in the same instrument, is severable into distinct and independent contracts, a breach of one of these contracts does not constitute a breach of another.

3—PLEADING—CONTRACT, BREACH MUST BE ALLEGED.—Where a complaint upon a contract does not show a breach of the contract by the defendant it fails to state facts sufficient to constitute a cause of action.

4—FACTS AND DECISION OF CASE EPITOMIZED.—The defendant purchased a mining property from the plaintiff, for which he agreed to pay him a certain proportion of the net proceeds of the mines, and also to employ him as superintendent at a salary payable monthly: *Held*, that these contracts were separable, and that the discharge of the plaintiff, though wrongful, constituted no breach of the contract concerning the net proceeds.

APPEAL from judgment on non-suit from District Court, Humboldt county; *A. E. Cheney*, District Judge.

The facts are stated in the opinion.

*Curler & Curler* and *Thomas E. Haydon*, for Appellant:

This is an appeal from the judgment of non-suit upon a part of the counts in plaintiff's complaint. [After several pages of argument on facts and pleadings.] Defendant's ground for non-suit, that plaintiff was discharged by defendant without objection or protest, and that he voluntarily quit defendant's service, is a marvel of misconstruction. The facts shown entitle plaintiff to a retrial of this cause and to a judgment in accordance with the prayer of their complaint, without recourse to any question of law.

*S. J. Bonnifield*, for Respondent:

This action was brought by appellant as plaintiff in the court below to recover of defendant (respondent) the sum of twenty thousand dollars, the alleged balance due on the purchase price of certain mining property described in the complaint, and six hundred dollars, alleged balance due as wages of plaintiff as superintendent of defendant. The plaintiff recovered a judgment for the wages and the action was dismissed, on the motion of the defendant as to the claim of twenty thousand dollars. From this latter the appeal is taken. [After several pages of argument on the facts.] The defendant was bound only to exercise good faith, reasonable diligence and use reasonable exertions in view of all the circumstances and surroundings. (6 N. W. 10; 19 N. W. 212; 78 Ill. 633.) The plaintiff must show that the net proceeds were obtained before he can have a cause of action and then only to the extent of 50 per cent of such proceeds. (36 N. Y. 578.) The complaint shows upon its face that the plaintiff has no cause of action for the twenty thousand dollars, or for any part thereof. It does not state facts sufficient to constitute a cause of action therefor.

By the Court, BIGELOW, C. J.:

On the 13th day of March, 1891, the plaintiff sold the defendant several mining claims, together with other real

and personal property, for a consideration of $10,000 in money and 50 per cent of the net proceeds of the mines, until the sum of $20,000 more should be paid him. 'An instrument in writing was drawn up to this effect, in which it was stated that it was distinctly understood and agreed that this money was not to be paid until there were net proceeds, and then only out of 50 per cent of such net proceeds. The instrument also contained a provision that the plaintiff should finish a smelting furnace, then partly erected upon the property, or, if he did not, the defendant might complete it, and retain the expense of so doing out of any moneys thereafter to become due plaintiff. Also that, if defendant should be dispossessed from any of the mining claims, he could retain $2,000 for each claim so taken from him.

On March 20th another writing was entered into, whereby the plaintiff agreed to act as superintendent of the mining operations to be carried on upon the property, "said services to commence April 1, 1891, and to continue for such time as may be required to complete the payment in full of the purchase price for said property, and for such longer time as may be agreed upon if so desired. In consideration of the above, said Sutherland hereby agrees to pay said Hutchens the sum of one hundred dollars per month, payably monthly, for said services." The plaintiff testifies that this was a part of the original agreement made for the sale of the mines, but was left out of the first instrument by mistake, and we shall consider the case upon the theory that such is the fact.

Mining operations were begun and carried on under the superintendency of the plaintiff until December, 1892, when he was virtually superseded as superintendent by an agent of plaintiff, who continued the mining until some time in March, 1893. On March 17, 1893, the plaintiff was discharged, and he commenced this action on April 5, 1893. He sues for $20,000, balance due on the sale, and for six months' services as superintendent, for which he had not been paid. He obtained judgment for the balance due upon his wages, but was non-suited on the other claim, and from that non-suit he appeals.

The complaint does not allege that there have been any net proceeds from the mines, nor that a reasonable effort to obtain net proceeds had not been made, nor that defendant

had sold the property, or otherwise disabled himself from obtaining net proceeds; but his right to recover is based upon the theory that the discharge of the plaintiff from his superintendency constituted a breach of the contract, and entitled the plaintiff to immediately recover the balance on the purchase price of the property.

The plaintiff's attorneys have correctly recognized that for such discharge to constitute a breach of the contract concerning the sale of the mines it must appear that the contract was entire. If, although contained in the same instrument, there were really two separate and distinct contracts—one for the sale, and another for the plaintiff's employment—a breach of the latter would not constitute a breach of the former. Whether a contract is separable or entire is a question of the intention of the parties, to be determined by considering the language employed and the subject matter of the contract. If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, such a contract will generally be held to be separable. (2 Pars. Cont. 517; *State* v. *Jones*, 21 Nev. 510, and cases there cited.) We think this is such a contract as that above described. It consists of several distinct and separate items, performed and to be performed by the plaintiff, and the price to be paid is apportioned to each of the items. *Prima facie*, this makes it a severable contract, and we find nothing in the instrument that indicates a different intention. On the contrary, the language used in other parts of the agreement strengthens this conclusion. If the plaintiff failed to complete the furnace, this was not to abrogate the contract, but the penalty for the failure was to be what it would cost the defendant to complete it. Even if the title to some of the mines failed, the sale was still to stand. The consideration for the sale—the plaintiff's share of the proceeds—was fixed and determined. A fixed sum, payable every month, was to be paid him for his services. This part of the agreement was an ordinary contract of hiring, to continue until the happening of an uncertain event in the future. Although a part of the agreement as originally made, it could have been as well made at any other time, and could have been contained, as it really was, in a sepa-

rate instrument. Each agreement was complete in itself. The hiring of the plaintiff did not increase the defendant's liability on the sale, nor did it increase the plaintiff's security, for there was no provision that he was to have any particular control or management of the mining operations; and, in its absence, we must suppose the intention was that he should act under the control and direction of the owner, the same as any other superintendent would.

Again, it is unreasonable to suppose that the parties intended the rendition of the services by the plaintiff to constitute a condition precedent to the payment for the mines, so that, no matter what the mines might produce in the way of net proceeds, he would have forfeited all claim upon them had he died, or become sick, or by reason of disagreement with his employer, or for other reason, had ceased to work for him. But if he would not, then the defendant did not incur a like penalty by discharging him. It would be equally absurd to suppose, without clear language to that effect, that the defendant intended to bind himself to keep the plaintiff employed as superintendent, whether satisfied or not with his services, or, if he did not, to pay him immediately his full share of net proceeds that might never be obtained. Particularly is this the case in view of the statement in the agreement that the $20,000 was to be payable only out of such net proceeds. The equitable and fair construction to be placed upon the instrument is that it was intended to cover two separate and distinct contracts, for the breach of either of which the party committing it should incur only a liability for the damages sustained by the other through that breach; and we find nothing in the matter to indicate any different intention.

Considering it thus, the plaintiff has claimed no damages for a breach of the contract of employment except the balance of wages due him, and for this he has obtained judgment. As to the contract for payment for the property sold, it is not alleged that the defendant has obtained any net proceeds, nor that he has failed in any way to comply with any of either the express or implied conditions of his agreement. Such being the case, we are of the opinion that the complaint fails to show any breach of this contract by

the defendant, and consequently that it fails to state facts sufficient to constitute a cause of action.

As we understand the evidence, it is no better than the complaint, and equally fails to show a cause of action existing upon this claim at the time of the commencement of the suit, whatever may have been the case since. If so, it was no injury to plaintiff that his complaint was held good upon demurrer. If 'anything, that was an error in his favor.

The judgment is affirmed.

BELKNAP, J.: I concur.

BONNIFIELD, J., having been an attorney in the case in the lower court, did not participate in the decision.