BETTY L. FULLER, APPELLANT, v. UNITED ELECTRIC CO., A CORPORATION, RESPONDENT.

No. 3784

July 15, 1954.                                       273 P.2d 136.

*Milton W. Keefer*, of Las Vegas, for Appellant.

*Bonner and Rittenhouse*, of Las Vegas for Respondent.

## OPINION

By the Court, MERRILL, J.:

This appeal challenges the measure by which damages were awarded plaintiff below for breach of a construction contract.

The defendant (appellant here), proposing to construct a new home in Las Vegas, entered into a contract with the plaintiff company for installation of electric wiring. The agreed price was $1,410 and the terms of payment were expressly stated as follows: "80% of contract price payable on completion of rough-in and inspection thereof; balance payable on final completion and inspection." Work proceeded under the contract to completion of rough-in. Inspection was made by the municipal building inspector and the work was approved. The defendant, after paying $500 on account, became

dissatisfied with the plaintiff's work and refused to permit the plaintiff to continue. The job was completed by a different electrical contractor at considerable additional expense to the defendant.

Plaintiff, contending that defendant was guilty of breach of contract, seeks damages under three causes of action: first, for the sum of $1,128, being 80 percent of the contract price, claimed as due under the contract since rough-in had been completed; second, for extras furnished; third, for loss of profits which would have been realized had plaintiff been permitted to complete the contract. The defendant, contending that she was justified in terminating the contract, counterclaimed for damages suffered by virtue of plaintiff's allegedly faulty workmanship and the necessity for employing others to complete the contract.

The trial court, sitting without a jury, dismissed defendant's counterclaim and gave judgment to plaintiff in the sum of $1,048.60. In its decision it states: "The amount due the plaintiff is determined to be $1410.00 according to the contract; 80% of said sum is $1128.00; 20% profit thereon is $225.60. In conclusion the court finds that there is due and owing to plaintiff by defendant the following:

|                    |         |
|--------------------|---------|
| "On contract       | 1128.00 |
| "On extras         | 195.00  |
| "Profit            | 225.60  |
|                    | "1548.60 |
| "Less $500.00 paid | 500.00  |
| "Balance           | 1048.60" |

From that judgment defendant has taken this appeal.

She first assigns as error the court's dismissal of her counterclaim. The court found that she was not justified in termination of the contract; that plaintiff had not been guilty of breach; that if there was fault in construction it was on the part of the architect and not the

plaintiff. While in some respects the facts are in dispute, support for this determination is found in the record and we shall not disturb it.

Defendant next assigns as error the court's allowance of $195 for extras. In this respect the court's decision states: "As to the extras, the proof was that on Aug. 9, 1951 an invoice was made showing extras furnished in the sum of $314.00. The testimony of Mr. Mays, one of the employees of plaintiff, showed that all of the extras listed in said invoice except the last four items thereof, were furnished and installed. These items amounted to $119.00. No other satisfactory proof being furnished the court can only find the amount of extras to be $195.00." The record demonstrates that the last four items of extras amounted to $129, rather than $119 and that, accepting the testimony upon which the court relied, judgment upon this cause of action should have been for $185 rather than $195. With this minor correction the record supports the court's finding and, save for such correction, it will not be disturbed.

Defendant next challenges the allowance of damages for 80 percent of the contract price plus 20 percent profit. Upon this point we agree that her contentions have merit.

It is to be noted that plaintiff proceeded not in quantum meruit but for contract damages. The generally accepted rule as to measure of damages in such a case as this is stated as follows in Bradley v. Nevada-California-Oregon Railway, 42 Nev. 411, 420, 178 P. 906, 908: "If the breach consists in preventing the performance of the contract without fault of the other party, who is willing and able to perform, the damage of the latter consists in two distinct items, namely: First, what he has already expended toward performance (less materials in hand); and, second, the profits that he would realize by performing the whole contract." Stated in another way, the rule is that "a contractor who is not

in default should recover the total price promised less the cost of performing, in case no work has been done, or of completing performance of the work, where there has been partial performance." 5 Williston on Contracts, 3824, sec. 1363. To the same effect see 1 Restatement of the Law, Contracts, 578, sec. 346, Comment g, h; 5 Corbin on Contracts, sec. 1094. "The purpose of money damages is to put the injured party in as good a position as that in which full performance would have put him." Restatement of the Law, supra, page 574, Comment b.

The trial court's measure of damages cannot be said to meet the requirements of the rule.

As to profits the court found, "The amount claimed by plaintiff, to-wit 20%, appears reasonable." This might well be regarded as reasonable profit. The measure of contract damages, however, does not ensure a reasonable profit, or, indeed, any profit beyond that provided by the contract itself. What is allowed is the profit, if any, which would have been realized had the contract proceeded to completion.

Under the contract's provision that 80 percent of the contract price should become payable upon completion of rough-in, the court has allowed $1,128. It is to be noted that the breach by defendant was not a partial breach with the contract continuing in effect notwithstanding, in which event an installment or progress payment due under the contract might be claimed in full. The breach was a total breach and was so treated by plaintiff. The contract was thereby terminated.

A similar situation confronted the court in New Era Homes Corporation v. Forster, 299 N.Y. 303, 86 N.E.2d 757, 758, 22 A.L.R.2d 1338. There the contract provided a total price of $3,075 payable in varying amounts at various stages of completion. The court stated the question to be whether the contract was "an entire contract, with one consideration for the doing of the whole work,

and payments on account at fixed points in the progress of the job, or was * * * a severable or divisible one in the sense that, of the total consideration, $1,150 was to be the full and fixed payment for delivery of materials and starting of work, $1,500 the full and fixed payment for work done up to and including 'completion of rough carpentry and rough plumbing,' and $425 for the rest." The court then proceeded to its determination. "We hold that the total price of $3,075 was the single consideration for the whole of the work, and that the separately listed payments were not allocated absolutely to certain parts of the undertaking, but were scheduled part payments, mutually convenient to the builder and the owner. That conclusion, we think, is a necessary one from the very words of the writing, since the arrangement there stated was not that separate items of work be done for separate amounts of money, but that the whole alteration project, including material and labor, was 'to be supplied for $3,075.00.' There is nothing in the record to suggest that the parties had intended to group, in this contract, several separate engagements, each with its own separate consideration. * * * We think that is the reasonable rule—after all, a householder who remodels his home is, usually, committing himself to one plan and one result, not a series of unrelated projects. The parties to a construction or alteration contract may, of course, make it divisible and stipulate the value of each divisible part. But there is no sign that these people so intended. * * * We would, in short, be writing a new contract for these people if we broke this single promise up into separate deals; and the new contract so written by us might be, for all we know, most unjust to one or the other party."

See also: 1 Restatement of the Law, Contracts, page 386, sec. 266, illustration 4; 3 Corbin on Contracts, sec. 697 supplement.

In our view the contract in this case was clearly an

entire one. The specified payment of 80 percent upon completion of rough-in was but a scheduled part payment upon the specified contract price and was not a full and fixed payment allocated absolutely to that portion of the work done up to completion of rough-in. Upon a total breach, then, damages must be ascertained upon the entire contract and the total contract price without regard to those provisions having to do with the times at which portions of the contract price were to become payable.

Judgment upon appellant's counterclaim is affirmed. Judgment upon respondent's second cause of action for extras is reduced by the sum of $10 and as so modified is affirmed in the sum of $185. Upon respondent's first and third causes of action for contract damages and profits, judgment is reversed and the matter remanded for new trial limited to a determination of the extent of damage suffered by respondent by virtue of appellant's breach of the contract between the parties. Appellant is awarded one-half of the costs of her appeal.

EATHER, C. J., and BADT, J., concur.