JERRY THOMSEN, Appellant, v. LEE GLENN, Respondent.

No. 4793

February 3, 1965                    398 P.2d 710

*Coulthard & Smith,* of Las Vegas, for Appellant.

*Singleton and De Lanoy,* and *Rex A. Jemison,* of Las Vegas, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

This is an action for specific performance of a written agreement to sell land, brought by the buyer Glenn against the seller Thomsen. Glenn won below, and Thomsen appeals.

Thomsen, a resident of New York, owned unimproved land in Clark County which he wished to sell. He orally listed it for sale with Thurmond, a broker who, in turn, contacted Glenn. Using a printed form furnished with "compliments of Lawyers Title of Las Vegas," Thurmond and Glenn together prepared an offer to purchase Thomsen's property for the total price of $26,000, payable $6,000 down and $5,000 annually thereafter, plus interest at 6 percent. An escrow was to be opened with Lawyers Title of Las Vegas and was to close within 60 days. In addition, the broker, at Glenn's request, wrote on the face of the printed form, "buyer requests 5 acre release clauses." The printed form also acknowledged receipt of $500, which was to be credited against the $6,000 down payment, if made. Glenn, as the purchaser, and Thurmond, as the broker, each signed the offer to purchase on May 5, 1962. The broker delivered this offer to Thomsen. After striking out the request for a 5-acre release clause, Thomsen signed the document. On May 7, 1962, Glenn opened an escrow with Pioneer Title Insurance Company. On May 8, 1962, Pioneer Title mailed escrow instructions to Thomsen. On May 25, 1962, the title company wrote Thomsen, requesting that he execute and return a copy of the escrow instructions. On June 6, 1962, the company again wrote Thomsen, "May we please hear from you at your earliest convenience

with regard to the above escrow." Thomsen failed to respond to any of the communications from the title company. On June 15, 1962, Glenn deposited the $6,000 down payment with the title company. Thomsen refused to consummate the deal, and this litigation ensued.[1]

The single contention advanced here is that agreement was never made. The seller's argument is this: He signed the document only after he had struck the buyer's request for a release clause. Thus, his signing did not create a contract, for he did not accept that which had been proposed.[2] Rather, his signature thereon, under such circumstances, constituted a counter offer which was never accepted by the purchaser—not accepted, because Glenn, the purchaser, chose to open an escrow with Pioneer Title rather than with Lawyers Title as specified in the counter offer. By opening an escrow with a different company, the buyer's purported acceptance was not unqualified and, in legal effect, was not acceptance at all. Cf. McCone v. Eccles, 42 Nev. 451, 181 P. 134.

We are wholly unpersuaded by the seller's contention. There is nothing in this record to suggest that the identity of the escrow was significant to either party. It is, of course, true that Lawyers Title was specified in the agreement. Undoubtedly this came about because the agreement was on a printed form prepared by Lawyers Title and furnished "with its compliments" to real estate brokers for use in their daily business. The seller, in giving his testimony at the trial, offered nothing to show that the identity of the escrow was ever intended to be an important item of the contract. Manifestly, it was not.

---

[1] We have stated the facts which support the judgment and have not mentioned possible conflicts or explanations which, on appeal, must be resolved in favor of the prevailing party below.

[2] We do not decide whether a contract came into existence when the seller signed the document after striking the buyer's request for a release clause. It is, of course, arguable that the request for a release clause was just that—a request, and not a condition; that the buyer offered to be bound whether his request was honored or rejected, and became bound, as did the seller, when the seller signed the document. Cf. Pravorne v. McLeod, 79 Nev. 341, 383 P.2d 855, holding, inter alia, that an acceptance which requests a release clause does not invalidate the acceptance. See also 1, Williston on Contracts § 67A, at 193.

(Cf. Finnell v. Bromberg, 79 Nev. 211, 228, 381 P.2d 221, 229, where we found it permissible on the facts there present for an optionee to tender the purchase price through escrow rather than to the optioner directly, as specified in the option contract.) Indeed, when the buyer opened an escrow with a different company, and the seller was notified, he (the seller) did not object. Presumably the seller would have done so had Pioneer Title not been acceptable to him. Bodem v. Friedman, 90 Cal.App.2d 225, 202 P.2d 632. We agree with the lower court that Thomsen's counter offer was accepted by Glenn when the escrow was opened and Thomsen was notified of that fact by the title company. The down payment was thereafter made within the time specified in the agreement. Thomsen may not now escape his contract and frustrate consummation by a belated insistence upon strict compliance with an insignificant detail.

The seller has suggested one further reason for reversal which, in our opinion, is equally unsound. The seller acknowledged receipt of $500 when he signed the agreement. In fact, the $500 was not paid at that time. The false recital does not deprive the agreement of its legal operation because payment of the $500 was not essential to the creation of a contract, (Restatement, Contracts § 243), nor was it the consideration for the contract before us. The consideration is found in the mutual promises to buy and sell. The $500 provision was for liquidated damages, should the buyer fail to perform. He did perform. In any event, the recital of the receipt of $500 is conclusively presumed to be true (NRS 52.060(2))[3], and the seller may not be heard to deny it.

Affirmed.

McNAMEE, C. J., and BADT, J., concur.

---

[3]NRS 52.060 reads: "The following presumptions, and no others, are deemed conclusive: (1) * * *.

"(2) The truth of the fact recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title, but this rule does not apply to the recital of a consideration."