DREDGE CORPORATION, A NEVADA CORPORATION, APPELLANT, *v.* WELLS CARGO, INC., RESPONDENT.

No. 4931

February 10, 1966                      410 P.2d 751

See also 80 Nev. 99, 389 P.2d 394.

*Deaner, Butler & Adamson,* of Las Vegas; *Marcus & Kahn,* of Beverly Hills, California, for Appellant.

*Guild, Guild & Cunningham,* and *David W. Hagen,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The inception of this controversy was an agreement entered into on May 12, 1954, between Dredge Corporation and Wells Cargo, Inc., concerning mining claims in Clark County, Nevada. The parties have different notions about the meaning of that agreement and their rights thereunder. Dredge acquired the mining claims and wished to patent them under the United States mining laws. Wells, a gravel business operater, wanted to obtain a free gravel supply. To accommodate the desire of each the agreement was made. In short, the agreement obligated Wells to excavate at least 500 cubic yards of gravel from each claim and spend at least $500 in the improvement of each claim. A time limit was specified. Also, Wells was to do the required annual assessment work until patents were issued. When a patent was issued on any claim, Dredge was to convey to Wells an undivided one-half interest therein. The May 12, 1954, agreement concerned 13 unpatented mining claims (Dredge Nos. 25, 26, 27, 52, 53, 54, 55, 56, 57, 58, 59, 61 and 62). On May 23, 1955, 11 more were added (Dredge Nos. 13, 14, 15, 16, 36, 37, 40, 41, 44, 45, 60), and on June 8, 1955, 5 more (Alpha, Beta, Gamma, Delta, Epsilon).

As to the original group of 13 claims the parties

agreed that performance by Wells on Claims 25, 26 and 27 was excused; that Wells fully performed on Claims 54, 55, 58, 59, 61 and 62. They do not agree whether Wells performed its contractual obligations on Claims 52, 53, 56 and 57. As to the 11 additional claims added to the agreement on May 23, 1955, it is conceded that Wells fully performed on Claim No. 60. Performance is disputed on the remaining 10, and an issue is raised as to whether performance by Wells was excused by reason of contest proceedings commenced by the Bureau of Land Management. The same is true with regard to the 5 claims added to the agreement on June 8, 1955. Wells did the annual assessment work on all claims to the time of trial. It is clear from the record that Wells ceased all other work on any of the claims in 1956, except Claims Nos. 54, 55, 58, 59, 60, 61 and 62.

On August 4, 1960, the United States issued patents to Dredge on Claims Nos. 58, 59, 61, 62 and the south one-half of 60. On November 15, 1962, Dredge gave Wells notice that Wells had failed to perform its contractual obligations on all claims on which patents had not been issued, and soon thereafter litigation started. On November 30, 1962, Dredge commenced an action for declaratory relief and for an accounting by Wells of profits from its gravel pit operations. In that case the lower court granted summary judgment to Wells, which was reversed on appeal. Dredge Corp. v. Wells Cargo, 80 Nev. 99, 389 P.2d 394 (1964). Meanwhile, on May 3, 1963, Wells sued Dredge for specific performance of its promise to convey an undivided one-half interest in the patented claims and for a partition. Dredge counterclaimed for the value of the gravel removed, for damages for breach of contract, and to quiet title in itself to all of the claims. As all issues raised by the first case were involved in the second, the parties agreed to dismiss the first action without prejudice and go to trial on the second. This was done. The lower court found in favor of Wells and against Dredge and this appeal followed. Reference to specific findings which are challenged, will be made as particular assignments of error are discussed.

The five main questions presented to us by the appellant Dredge are: First, is the contract of May 12, 1954, divisible as to each claim, thereby enabling Wells to acquire an interest in the patented claims on which it fully performed, even though it failed to perform on many of the unpatented claims? The lower court ruled that the contract was divisible and granted relief to Wells on the patented claims. Second, was the failure of Wells to perform on many of the unpatented claims excused because of the contest proceedings started by the Bureau of Land Management? The lower court found that performance by Wells was excused as it had performed "to a point that was practical," in view of the government contest. Third, assuming divisibility of the contract, what is the extent of Wells' interest in the patented claims? The lower court construed relevant contract provisions. Fourth, is Dredge entitled to an accounting of profits earned by Wells for gravel removed from the patented claims after the date that patents were issued? The lower court denied an accounting. Fifth, may Dredge recover damages from Wells for breach of contract? By reason of its rulings on the first and second issues above mentioned, the trial court, a fortiori, denied contract damages to Dredge. Dredge challenges each ruling.

(1) The district court found the contract divisible as to each claim and reasoned that Wells was entitled to specific performance from Dredge as to the claims on which patents were issued. A contract is divisible where, by its terms, performance of each party is divided into two or more parts; the number of parts due from each party is the same; and the performance of each part is the agreed exchange for a corresponding part by the other party. Restatement, Contracts § 266. Of course, the words used and the subject matter involved show the intention of the parties. State v. Jones, 21 Nev. 510, 34 P. 450 (1893); Hutchens v. Sutherland, 22 Nev. 363, 40 P. 409 (1895); Linebarger v. Devine, 47 Nev. 67, 214 P. 532 (1923); Fuller v. United Electric Co., 70 Nev. 448, 273 P.2d 136 (1954). In Jones, Linebarger,

and Fuller, the contracts were declared to be entire, while in Hutchens the language of the contract pointed to divisibility and the court so ruled. The intent of the parties and the object sought to be accomplished controls. Sterling v. Gregory, 149 Cal. 117, 85 P. 305 (1906).

Here we agree with the lower court that the words used show that Dredge and Wells intended to treat each mining claim separately. The contract states that "when patents have been issued on any of said claims" Dredge shall convey to Wells an undivided one-half interest therein. The word "any" suggests divisibility. Wells was not obliged to work all claims simultaneously. The contract provided otherwise. Finally, and perhaps of overriding significance, is the subject matter involved. The parties desired to secure patents for unpatented claims. When the contract was made they had good reason to believe that they might obtain patents on some claims and not on others. Success depended in part upon the view of the United States as to whether a patent on any particular claim should be granted. Patents were separately applied for, proof submitted as to each claim, and separately treated. The parties undoubtedly had this in mind when they imposed the obligation on Dredge to convey when a patent was issued on "any" claim.

Dredge argues that the cancellation clause of the contract destroys divisibility. That clause provides that, if Wells fails to perform "any condition, covenant, term or agreement herein, at the time and in the manner herein set forth after 5 days written notice of such failure, then this agreement is automatically cancelled * * *." That language is not germane to the issue of whether the contract is divisible. By itself, that clause is compatible with either divisible contracts or an entire contract. As indicated, we think that other language of the contract and the subject matter involved shows the parties' intention to treat each claim separately. A fortiori, the cancellation clause is applicable to each claim separately.

Notwithstanding the lower court's view about divisibility, with which we are in accord, Dredge insists that the remedy of specific performance is not available to Wells with respect to the patented claims, because of its failure to perform contractual obligations on the unpatented claims.[1] The position is not valid. Having determined that the contract is divisible as to each claim, it follows that a right to specific performance exists as to each claim upon which Wells has fully performed and a patent has been issued. Bower v. Bagley, 9 Wash. 642, 38 P. 164 (1894).

(2) The next question to be considered is the contention that the district court erroneously found that Wells' obligation to perform on the unpatented claims (except Claims Nos. 52, 53, 56, 57)[2] was excused because of contest proceedings commenced by the Bureau of Land Management. In so ruling the court expressly declined to decide whether Wells had fully performed on those claims, though much evidence was received bearing on that issue. Wells contended throughout that it had given full performance on each claim, and offered evidence. Only subordinately did Wells assert the contest proceedings as an excuse for non-performance. Of course, it would be inappropriate for this court to make an initial finding as to performance by Wells. That is a trial court function and, as we agree with Dredge that performance by Wells was not excused, a remand is necessary as to this aspect of the litigation.

---

[1]The main authority cited is Byers v. Fuller, 58 F.Supp. 570 (D.C.E.D. Ky. 1945), where the court found the agreement to be divisible and at the same time refused specific performance for the part performed because the plaintiff had defaulted as to other seperable parts. We do not agree with the Byers holding and state only that we think that court erred in concluding that the agreement was divisible rather than entire.

[2]Claims Nos. 52, 53, 56 and 57 were not contested by the Bureau of Land Management. Yet the lower court failed to decide whether Wells had fully performed on those claims, nor does the judgment deal with them. They are in limbo. The rights of the parties with respect to those claims should be resolved in this litigation.

The lower court ruled that performance by Wells was excused because of contest proceedings commenced by the Bureau of Land Management. The thought advanced is that the federal administrative proceeding effectively prevented further work by Wells on the claims being contested and excused further performance. When those claims were added to the agreement of May 12, 1954, the parties knew of the government contest and exchanged promises notwithstanding such knowledge. In such circumstances, impossibility of performance because of governmental action, did not occur. McCulloch v. Liguori, 88 Cal.App.2d 366, 199 P.2d 25 (1948). Furthermore, the filing of a contest by the government is not a "judicial executive or administrative order" preventing or prohibiting further work on the claims by Wells.[3] That administrative proceeding is designed to determine the validity of the mining locations and does not preclude prospecting or exploration work, nor does it affect the right to occupy the claims for those purposes. Davis v. Nelson, 329 F.2d 840 (9th Cir., 1964). Wells could work the claims notwithstanding the government contest. Accordingly, performance by Wells was not excused.

Our ruling on this question eliminates any need to consider the fifth question offered by this appeal—may Dredge recover damages from Wells for breach of contract? That question may become an issue in the event the lower court on remand decides that Wells has not fully performed its contractual obligations with respect to the unpatented claims we have been discussing.

(3) We now turn to consider the extent of Wells' interest in the patented Claims 58, 59, 61, 62 and the south one-half of 60. Paragraph 7 of the contract provides: "When patents have been issued on any of said

---

[3]Restatement, Contracts § 458 provides: "A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited (a) by the Constitution or a statute of the United States, or of any one of the United States whose law determines the validity and effect of the contract, or by a municipal regulation enacted with constitutional or statutory authority of such a State, or (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States."

claims, said Dredge Corporation agrees to convey an undivided one-half interest in and to said land provided on any part of said land wherein said Wells Cargo, Inc. has constructed buildings, pits, etc., that part shall be conveyed to said Wells Cargo, Inc." The Wells gravel pit occupied a part of patented Claims 61 and 62. The record shows that Wells had removed about 1,989,000 cubic yards of gravel from that pit area during the 10 year period, 1954 (when the agreement was entered into) to 1964 (when the parties presented their differences to the court).

Dredge contended below, and contends here, that the quoted proviso of the contract entitles Wells to an undivided one-half interest in the patented claims, and no more. Wells agrees, except as to the gravel pit area of 61 and 62 to which it claims fee simple title. The lower court ruled for Wells on this point, relying on that portion of the quoted paragraph, "provided on any part of said land wherein said Wells Cargo, Inc. has constructed buildings, pits, etc. that part shall be conveyed to said Wells Cargo, Inc." We agree with that ruling. Though the word arrangement throughout the contract is not grammatical, we think that the intention is fairly expressed. Evidence aliunde is not needed.

Wells is a gravel business operator and wanted a free gravel supply. For this reason Wells contracted with Dredge. A recital of their agreement points this out— "Whereas, said Wells Cargo, Inc. is desirous of entering into an agreement with said Dredge Corporation for the removal of gravel from said claims * * *." That recital of fact is conclusively presumed to be true. NRS 52.060 (2) ; Thomsen v. Glenn, 81 Nev. 56, 398 P.2d 710 (1965). Consonant with that purpose, Wells was granted the right before patent to "remove gravel from any of said claims without limit and without royalty" (paragraph 8 of the agreement) ; and after patent Wells was to become the owner of that part of the patented claim occupied by its gravel pit (paragraph 7 of the agreement already quoted). We think that the holding of the lower

court as to Wells' interest in the patented claims honored the plain meaning of the agreement and is in harmony with the underlying purpose which moved Wells to contract with Dredge.[4] This being so, it follows that the ruling below denying Dredge's counterclaim for an accounting of the profits earned by Wells for gravel removed from the patented claims after the date that patents were issued is also correct, for on that date Wells became the equitable owner of the gravel pit area. We thus dispose of the third and fourth questions presented by this appeal.[5]

Accordingly, the judgment below is affirmed with respect to the patented claims known as Dredge Claims 58, 59, 61, 62 and the south one-half of 60. It will be necessary for the district court to specify a time within which the judgment as to these claims must be complied with, as the time originally designated has passed because of this appeal.

For reasons expressed in this opinion, this case must be remanded to the district court for additional findings with respect to the unpatented claims concerning which the judgment was silent. As to those claims we remand and direct the lower court to find from the record as it now exists whether Wells performed its contractual obligations: (1) with respect to the unpatented claims known as Dredge Claims 52, 53, 56 and 57, which were not contested by the Bureau of Land Management; and (2) with respect to the unpatented claims known as Dredge Claims 13, 14, 15, 16, 36, 37, 40, 41, 44, 45, Alpha, Beta, Gamma, Delta and Epsilon, which were contested by the Bureau of Land Management; and to make such further orders as may become necessary by reason of its finding on the issue of performance.

Finally, as the parties have conceded that Wells fully performed with respect to the unpatented claims known

---

[4]The purpose of Dredge in entering into the agreement is equally clear. The agreement required Wells to bear the extensive costs to be incurred in developing the claims for patent. Dredge was not financially obligated.

[5]An assignment of error about a ruling on evidence need not be considered as it does not affect our resolution of this appeal.

as Dredge Claims 54 and 55, which claims are not contested by the Bureau of Land Management, the judgment must be enlarged to provide that Wells shall have the right to continue to remove gravel from those claims without limit and without royalty. Should patents later issue, Wells' interest therein shall be as herein provided with respect to the claims on which patents have already issued.

Each party shall bear its own costs on appeal.

BADT, J., and BOWEN, D. J., concur.